REGINALD D. TAYLOR, Respondent, *v.* HENRY S. MANNING, Appellant.

Second Department, January 16, 1920.

Fraud — action for alleged fraudulent representations inducing plaintiff's purchase of corporate stock — evidence — measure of damages.

In an action for fraud it was charged that the defendant made false and fraudulent representations to his friend A and to the plaintiff, A's grandson, who was the brother-in-law of defendant's son, concerning the financial condition of a corporation in order to induce plaintiff to invest in the stock of the company, the money being supplied by A. It appeared that the defendant, who was not an officer, director or stockholder in the corporation and whose sole interest was because of the fact that his son was an officer and was the husband of the plaintiff's sister, voluntarily examined the books of the corporation and made representations that showed that the stock was worth par. Plaintiff purchased the stock and shortly thereafter the company went into bankruptcy. There was no satisfactory evidence of any financial gain to the defendant personally and the statements attributed to him appear to have been largely his opinion.

*Held,* that a verdict charging the defendant with fraud is contrary to the evidence and that, therefore, the judgment should be reversed and a new trial granted.

The defendant being charged with fraud was entitled to relate to the jury all of the facts upon which he based his statements, without reference to whether the plaintiff was present or not, and, hence, it was error to exclude defendant's evidence of his conversations with A upon the ground that they were not made in plaintiff's presence.

The fact that plaintiff omitted the deposition of A, now deceased, read as a part of his case upon a former trial in no way affected the relevancy of the defendant's testimony as to his conversations with A.

Second Department, January, 1920.          [Vol. 190.

If the plaintiff is entitled to recover the measure of damage is the difference
    between what the stock was actually worth at the date of purchase and
    what it would have been worth if the alleged representations were true.

APPEAL by the defendant, Henry S. Manning, from a
judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of Queens on
the 18th day of January, 1919, upon the verdict of a jury,
and also from an order entered in said clerk's office on the
16th day of January, 1919, denying defendant's motion for
a new trial made upon the minutes in an action for fraud.

*Marvin W. Wynne* [*Clinton J. Ruch* with him on the brief],
for the appellant.

*Pierre M. Brown* [*William F. Purdy* with him on the brief],
for the respondent.

KELLY, J.:

When this case was before this court upon defendant's
previous appeal from a judgment entered upon the verdict of
a jury, we reversed the judgment and granted a new trial,
" for the reason that the learned trial justice erred in sus-
taining the objections to defendant's testimony of his transac-
tions and conversations with Armstrong, culminating at folio
180, and because in the absence of the books of the bankrupt
corporation concerning which the alleged false statements were
made, there was no legal proof of fraudulent representations."
(*Taylor* v. *Manning*, 185 App. Div. 897.) The error in
excluding defendant's evidence of his conversations with Judge
Armstrong was repeated upon the new trial which resulted
in the judgment now appealed from. These conversations
were again excluded upon plaintiff's objection that they were
not in his presence. But the defendant, charged with fraud,
was not so limited. He was entitled to relate to the jury
all of the facts upon which he based his statements, without
reference to whether the plaintiff was present or not. The
alleged fraudulent representations were said to have been made
in his conversations with Judge Armstrong and we cannot
understand upon what theory the plaintiff objects to his
evidence of what was done and said. It is true that on this

second trial the plaintiff omitted the deposition of Judge Armstrong, now deceased, read as part of his case upon the first trial as appears by the record on the former appeal, but this in no way affected the relevancy of the defendant's testimony as to such conversations. The vital element in the plaintiff's case was fraud, and the defendant was entitled to explain his reasons and his motives in making whatever statements or representations he did actually make. Upon this second trial the books of the bankrupt corporation referred to in our memorandum upon the former appeal were not produced. It was stipulated that they were lost. But in the absence of the books, the evidence of their contents is fragmentary and unconvincing. It was concerning the contents of these books that defendant is charged with fraudulent representations. They were not the defendant's books, nor was he responsible for their loss. He was not an officer, director or stockholder in the corporation. His relation to the matter was because his son was an officer in the corporation and was the husband of the plaintiff's sister. Both the plaintiff and defendant's daughter-in-law were grandchildren of Judge Armstrong. In the year 1911 the corporation was in financial difficulties, and the two older men, Armstrong and the defendant, were at the time endeavoring to assist the young people. It is evident that at the time the relations of all the parties were most friendly in character. This action was commenced in December, 1916, and it is charged that the defendant made false and fraudulent representations to his friend Armstrong, and to the plaintiff, Armstrong's grandson, who was the brother-in-law of defendant's son, concerning the financial condition of the corporation, in order to induce plaintiff to invest $2,500 in the stock of the company, the money being supplied by Judge Armstrong. The defendant, a retired business man, voluntarily examined the books of the corporation, and is said to have made representations that the books showed that the stock was worth par. Plaintiff purchased the stock, but shortly afterwards the company went into bankruptcy. There is lacking in the case any satisfactory evidence of any financial gain to the defendant personally, and the statements attributed to him appear to be largely

562 PEOPLE EX REL. RIESNER *v.* N. Y. NURSERY & C. HOSPITAL.

Second Department, January, 1920.        [Vol. 190.

his opinion as to the future of the business if affairs went well. Upon the present trial plaintiff deliberately omits the testimony of Judge Armstrong, read as part of his case upon the first trial, and the presumption is that it was not to his advantage to read this testimony. Upon the whole case, we feel that the verdict charging the defendant with fraud is contrary to the evidence and the judgment is, therefore, reversed and a new trial granted, with costs to appellant to abide the event. In view of the new trial, we may add that the measure of damage was not stated with exactness by the learned trial judge. If the plaintiff was entitled to recover, the measure of damage was not the amount actually paid for the stock, which was what the jury allowed, but the difference between what the stock was actually worth at the date of purchase, and what it would have been worth if the alleged representations were true. The fact that the corporation went into bankruptcy shortly after the purchase of the stock is not of itself sufficient, and plaintiff's witness, Mr. Noble, testified that at the date of the purchase the books of the corporation showed a surplus after payment of debts.

The judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

JENKS, P. J., RICH, BLACKMAR and JAYCOX, JJ., concur.

Judgment and order reversed and new trial granted, with costs to appellant to abide the event.